IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DARLA G. KOZAL                                                                PLAINTIFF

        v.                           Civil No. 2:14-CV-2186-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Darla Kozal, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her application for DIB and SSI on February 6, 2012, alleging an onset date of June 30, 2010, due to back pain, bad legs and feet, and headaches. Tr. 140-151, 171, 185-186. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 85-91, 93-99. An Administrative Law Judge ("ALJ") held an administrative hearing on February 11, 2013. Tr. 30-78. Plaintiff was present and represented by counsel.

At the time of the hearing, the Plaintiff was 48 years old. Tr. 34. She possessed an eighth grade education and past relevant work ("PRW") experience as a cashier/manager and retail stocker. Tr. 34, 37-48, 172, 177-184.

On April 26, 2013, the ALJ found that the Plaintiff's mild osteoarthritis of the lumbar spine with chronic back pain and plantar fasciitis were severe impairments, but they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 20-21. After partially discrediting her subjective complaints, the ALJ determined she retained the residual functional capacity ("RFC") to perform light work requiring only occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no concentrated exposure to hazards, including driving as a part of her work. Tr. 21-22. With the assistance of a vocational expert, the ALJ then found Plaintiff could perform her PRW as a cashier/manager and retail stocker. Tr. 24.

The Appeals Council denied review on June 30, 2014. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. ECF No. 7. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 10, 12.

## II.     **Applicable Law**:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at least one year and that prevents the claimant from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and

3

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion:

The Plaintiff raises the following four issues on appeal: 1) whether the ALJ fully developed the record with regard to her physical and mental impairments; 2) whether the ALJ properly evaluated her credibility; 3) whether the ALJ erred in concluding she could perform a range of light work; and, 4) whether the ALJ erred in concluding she could return to her PRW. The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

We have reordered the Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

#### A. Credibility:

Plaintiff asserts that the ALJ failed to provide good reasons for discrediting her subjective complaints of pain. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his or her pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his or her medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In reviewing the ALJ's credibility assessment, this court takes into account "all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians." *Polaski*, 739 F.2d at 1322.

Although the ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, he "may disbelieve subjective reports because of

4

inherent inconsistencies or other circumstances." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007); *see also Polaski*, 739 F.2d at 1322. However, as the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Thus, if the ALJ discredits a Plaintiff's credibility and gives good reason for doing so, we must defer to the ALJ's judgment, even if the ALJ failed to discuss every *Polaski* factor in depth. *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The Plaintiff alleges disability due to back pain, bad legs and feet, and headaches. She contends that balance issues related to her feet result in frequent falls. Further, the Plaintiff asserts that she can sit for 30 minutes to an hour before having to walk around for 5 to 10 minutes, stand no more than an hour without pain, cannot bend, and needs assistance lifting items. Tr. 56-60. However, she also volunteered that her doctor said she could stand for five hours.

The relevant medical evidence reveals as follows. On November 4, 2010, Plaintiff sought treatment at the Redbird Smith Health Center in Sallisaw for back and foot pain. Tr. 231-238, 240-243. She reported a work-related back injury in 1980. An examination revealed a decreased range of motion with pain in the left lower extremity (including the hip, thigh, calf, heel, ball of the foot, and fifth toe). Neurologically, she also exhibited decreased coordination in the left foot and decreased balance. X-rays of the chest, left hip, and feet were unremarkable. It appears that the doctor diagnosed the Plaintiff with a history of back injury, gastroesophageal reflux, nicotine dependence, bronchitis, mood disorder, anxiety, depression, bilateral podagra, and an inability to stand for prolonged periods due to left lower extremity pain.[1] Tr. 272.

---

[1] Although this list of impairments is not included on the treatment note for this date, a medical summary included in later records reveal that these issues were added to her "active problems" list on November 4, 2010. Tr. 272. However, a mere diagnosis alone is not sufficient to prove the impairment is disabling. *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014).

On June 15, 2011, Plaintiff returned with complaints of popping in her upper back toward her right shoulder and increased pain. Tr. 230. She reported a diagnosis of a "slipped disk" in her lower back approximately 15 years prior. However, the Plaintiff also indicated that she had tilled her garden approximately four weeks prior, and her right posterior upper back had hurt since that time. Plaintiff also complained of lower back pain with numbness in her lower legs "when [her legs were] dangling". She reported that Tylenol PM, back massage, and liniment had not been helpful. The nurse practitioner, Patricia Redhage, noted crepitus in the right upper shoulder, decreased leg strength bilaterally, and pain with forward flexion. Accordingly, she diagnosed right upper back pain and prescribed Flexeril and Mobic. Further, Nurse Redhage advised her to follow-up in four weeks. However, she failed to do so.

On June 16, 2011, x-rays of her lumbar spine revealed mild degenerative endplate changes with a questionable osteopenia and osteoporosis pattern and endplate hypertrophic changes mildly, particularly at the L2-3 and lower thoracic levels. Tr. 238-39, 261-262. The radiologist recommended a bone densitometry and later records indicate that one was performed. However, the results are not included in the record.

On March 22, 2012, Plaintiff underwent a general physical with Dr. Clifford Evans. Tr. 245-249. She complained of a history of chronic back pain for 20 years, dating back to a fall injury. As a result, the Plaintiff reported an inability to stand for long periods, walk, bend, and lift heavy objects. She also reported extreme tenderness in the balls of her feet, resulting in frequent falls and poor balance. As treatment for her pain, she admitted taking only Cyclobenzaprine and Meloxicam. An examination revealed a limited range of motion in the lumbar spine with no muscle weakness, spasm or atrophy. Dr. Evans noted no sensory abnormalities or gait and coordination problems. The Plaintiff was able to stand/walk without assistive devices, walk on

her heel and toes, and squat and arise from a squatting position. As such, Dr. Evans diagnosed her with bilateral sacroiliitis, bilateral plantar fasciitis, chronic muscle spasm of the lumbosacral spine, and chronic labyrinthitis (dizziness). He then assessed mild to moderate limitations regarding her body as a whole, due to chronic lower back pain.

On March 26, 2012, Dr. Stephen Whaley, a non-examining, consultative physician reviewed the Plaintiff's medical records and completed a physical RFC assessment. Tr. 252-259. He determined that the Plaintiff could perform light work involving occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Bill Payne affirmed this assessment on June 13, 2012. Tr. 267.

On April 11, 2012, Dr. Brandy O'Neal-Duke treated the Plaintiff at the Redbird Clinic. Tr. 263-264, 269-270. She reported falling the previous Friday, hitting her left knee, hip, hand, elbow, and upper chest. As a result, the Plaintiff voiced complaints of chest wall, wrist, and knee pain. She denied feeling short of breath, but stated that it did hurt on her left side to take a breath. At this time, the Plaintiff also reported running a daycare in her home, and caring for a one-year-old child. An examination revealed a normal gait with old ecchymosis on the upper left breast, knee, and wrist. Dr. Neal-Duke assessed her with status post fall with left chest wall, left knee, and left wrist contusions. She prescribed Ibuprofen and Percocet, and advised her to discontinue the Meloxicam and to rest her back.

On September 25, 2012, Nurse Redhage treated the Plaintiff for symptoms associated with restless leg syndrome and tooth pain. Tr. 271-275. The Plaintiff stated she was unable to sleep at night and constantly felt like she had to move her legs. She also complained of tooth pain when eating. An examination divulged inflammation around the lower left molar and chronic left knee pain. However, the examiner noted no edema or joint swelling, and her gait remained normal.

7

Nurse Redhage diagnosed the Plaintiff with restless leg syndrome, osteopenia, and a tooth infection. She indicated that the Plaintiff had undergone a DEXA (bone densitometry) scan the previous year revealing a T-score of -2.1, indicative of osteopenia. Nurse Redhage prescribed Keflex for the tooth infection, Carbidopa/Levodopa to treat her restless leg symptoms, Vitamin D for the osteopenia, and Cyclobenzaprine for her chronic pain. She also referred the Plaintiff for a dental exam.

On February 6, 2013, Physician's Assistant ("PA"), Carol Schmidt, at the Redbird Clinic treated the Plaintiff for a sore throat. Tr. 281-287. She also reported pain in her left leg, but stated that it had improved since beginning Mobic. A physical examination was normal, and a strep screen was negative. The PA assessed the Plaintiff with pharyngitis.

On June 5, 2013, Plaintiff returned for a follow-up of left shoulder, lower back, and left hip/leg pain, as well as reflux symptoms. Tr. 289. She reported that the Mobic was no longer helping. Because she had no recent x-rays, the doctor ordered them. Plaintiff further indicated that she had discontinued the Carbidopa/Levodopa because it made her nauseated.

The ALJ concluded that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, he did not find her statements concerning the intensity, persistence and limiting effects of those symptoms to be entirely credible. Tr. 23. The ALJ reasoned that the conservative nature of the Plaintiff's treatment, the inconsistency of her treatment, the minimal physical findings noted on physical examinations, the mild degenerative changes shown by the x-rays of her lumbar spine, the unremarkable x-rays of her hips and feet, and her reported activities diminished the credibility of her subjective complaints. *See Moore v. Astrue*, 572 F.3d 520, 524-525 (8th Cir. 2009) (holding conservative treatment with over-the-counter medication and limited use of prescription medication inconsistent

8

with disabling pain); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (finding that the claimant's ability to shop, drive short distances, attend church, and visit relatives was inconsistent with her assertion of disabling pain); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the claimant's ability to "dress and bathe herself," and "do some housework, cooking, and shopping" contradicted her "testimony regarding the severity of her pain and disability").

The Plaintiff does perform a number of activities that call her subjective complaints into question. On an adult function report, she reported the ability to care for her pets, care for her personal hygiene, prepare simple meals, do the laundry, clean, wash dishes, drive a car, ride in a car, shop in stores for food and supplies, handle her finances, watch television, work puzzles, and read books. Tr. 186-193. Perhaps the most damaging, however, is Plaintiff's reports to her doctors that she was able to till her garden and run a daycare out of her home, and her report to the Administration that she was actively looking for employment. Tr. 186, 230, 263-264. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (seeking work and working at a job while applying for benefits are activities inconsistent with complaints of disabling pain). She also stated that she worked at a daycare for one day, but they had to let her go because she did not have a GED. Tr. 54. *Kelley v. Barnhart,* 372 F.3d 958, 961 (8th Cir. 2004) (finding that a cessation of work for reasons unrelated to medical condition militated against a finding of disability).

Additionally, although the Plaintiff claims to suffer from medication side effects, particularly drowsiness, the record does not support her allegations that these side effects were

9

disabling. She never reported drowsiness to her doctors. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors that her medication made concentration difficult). In fact, her only report of a medication side effect was nausea caused by the Carbidopa/Levodopa. However, we do note that drowsiness is a common side effect of muscle relaxers. And, we find that, although not specifically stated by the ALJ, this side effect was included in the ALJ's RFC restriction related to working near hazards and driving.

Likewise, the record does not support the Plaintiff's contention that her lack of treatment was due to her financial inability to obtain treatment. It appears that the Plaintiff received treatment from the Redbird Smith Health Center, a tribally operated outpatient clinic in Sallisaw. We can find no evidence to indicate that any doctors, clinics, or hospitals refused to treat the Plaintiff due to her inability to pay for services. Accordingly, her alleged financial hardship does not excuse her failure to seek out consistent treatment. *See Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (absence of good cause for failing to seek treatment does not excuse said failure); *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (absence of evidence treatment denied because of her financial condition does not justify failure to seek medical treatment).

After reviewing the evidence of record, we find substantial evidence supports the ALJ's credibility determination.

    **B.**    <u>**Develop the Record**</u>**:**

Next, the Plaintiff contends that the ALJ failed to develop the record. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). However, the ALJ is not required to function as the claimant's substitute counsel, but only to

develop a reasonably complete record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). This court should only remand for further development of the record when the evidence does not provide an adequate basis for determining the merits of a disability claim. *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). Thus, while "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Plaintiff alleges that the ALJ should have developed the record with regard to her back injury, mood disorder, anxiety, depression, bilateral podagra, and inability to stand for prolonged periods due to left lower extremity pain. At the outset, we note that the ALJ did order a general physical exam in March 2012. Tr. 245-249. This exam revealed only a slightly limited range of motion in the lumbar spine with a normal gait and no neurological, muscle, or sensory deficits. Moreover, the doctor concluded that the Plaintiff would have only mild to moderate limitations regarding her body as a whole due to her chronic lower back pain.

We also need to point out that the Plaintiff did not allege disability due to depression or anxiety. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (fact that claimant did not allege depression on benefits application is significant even if evidence of depression was later developed). Further, aside from the one noted diagnosis on November 4, 2010, the record provides no evidence to indicate that doctors treated her for depression or anxiety. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of

disability due to a mental impairment). Doctors neither prescribed medication nor referred her for counseling. Moreover, all other records reveal a normal mental status and negative depression screens. Tr. 245-249, 263-264, 269-270, 271-275, 281-287.

As for her purported plantar fasciitis and bilateral foot pain, the November 4, 2010, record does make note of this impairment. Tr. 231-238, 240-243. However, x-rays of both feet were unremarkable. At her next appointment, in June 2011, Plaintiff reported back pain and numbness in her legs. Tr. 230. Although the exam did reveal some decreased bilateral leg strength, no mention is made of her feet. Moreover, she admitted recently tilling her garden, which appears to have triggered her symptoms.

During her consultative exam with Dr. Evans, on March 22, 2012, she did complain of pain in the balls of her feet causing frequent falls and poor balance. Tr. 245-249. Unfortunately, her physical examination revealed only a limited range of motion in her lumbar spine. She was able to stand and walk without an assistive device, walk on her heels and toes, and squat and arise from a squatting position without difficulty.

When she returned for treatment in April 2012, she voiced no complaints of foot pain. Tr. 263-264, 269-270. An examination revealed a normal gait. In September 2012, Plaintiff complained of restless leg symptoms and left knee pain. Tr. 271-275. Again, the examiner noted a normal gait with no edema or joint swelling. And, the Plaintiff made no complaints of foot pain.

In February 2013, the Plaintiff sought treatment for a sore throat and left leg pain that had improved with the addition of Mobic. Tr. 281-287. Again, she made no mention of foot pain and an examination was normal. The final treatment note, dated June 5, 2013, also makes no mention of her foot pain. Tr. 289. Rather, the Plaintiff complained of shoulder, lower back, hip, and leg

12

pain. Accordingly, we do not find that the record supports the limitations Plaintiff alleges result from her foot condition.

The record does contain more documentation of the Plaintiff's back pain. However, again, her treatment was conservative in nature, consisting of anti-inflammatories and muscle relaxers. Additionally, x-rays of her lumbar spine revealed only mild degenerative endplate changes and endplate hypertrophic changes, resulting in a diagnosis of osteopenia. Although the Plaintiff contends that her financial restraint prevented her from obtaining MRIs and CT scans that might have revealed more evidence to support her claim, there is no evidence to suggest that any of her treating sources ever recommended such tests. Further, repeat physical exams revealed a normal gait with no abnormalities.

Accordingly, it is the opinion of the undersigned that the ALJ has met his burden to develop the record by ordering the general physical exam in 2012. Given the results of this examination and the medical records in evidence, the ALJ was under no obligation to order additional examinations. The record contains adequate information upon which to base the ALJ's opinion. Further, there is no evidence to suggest that the Plaintiff sought out additional treatment for her impairments that might give rise to an obligation for the ALJ to contact her treating sources. Moreover, the Plaintiff cannot prove any prejudice has resulted from his failure to do so.

  **C.** **RFC:**

Plaintiff also contests the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, medical evidence that addresses the claimant's ability to

13

function in the workplace must support the ALJ's RFC determination. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

For many of the same reasons addressed in the section concerning the Plaintiff's subjective complaints, we find that the record supports the ALJ's RFC assessment. As previously discussed, a general physical exam revealed mild to moderate limitations to the body as a whole, resulting from the Plaintiff's chronic back pain. A slight limitation in the range of motion in her lumbar spine was the only physical finding noted. *See Forte,* 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider).

The other evidence of record revealed minimal degenerative findings with inconsistent and conservative treatment and no gait or coordination disturbance. The Plaintiff's daily activities also reveal her ability to perform some work related activities, including sitting to watch television, work puzzles, read books, and search for jobs on the internet. Further, she admitted that her doctor felt she was able to stand for five hours per day.

A non-examining, consultative physician concluded that the Plaintiff could perform light work involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The ALJ adopted this assessment, adding to it the limitation that she avoid concentrated exposure to driving and other hazards, due to her complaints of balance problems and reports that she does not drive much.

Accordingly, it is clear to the undersigned that the record supports the ALJ's RFC determination.

    **D.**    <u>**Return to PRW**</u>**:**

Lastly, the Plaintiff argues that the ALJ's determination that she can return to her PRW is erroneous. In determining whether the claimant can perform PRW, the ALJ should consider work

that (1) was performed in the last 15 years, (2) lasted long enough for the claimant to learn to do it, and, (3) qualified as substantial gainful activity. *See Terrell v. Apfel*, 147 F.3d 659, 661 (8th Cir. 1998). Although not required, the ALJ may elicit vocational expert testimony in evaluating a claimant's capacity to perform their PRW. *See Wagner*, 499 F.3d at 853-54; 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). The ALJ may also utilize the Dictionary of Occupational Titles to determine whether an individual can perform their PRW, given their RFC. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

Based on the Plaintiff's description of her PRW, the vocational expert ("VE") determined that she had worked as a cashier/manager (DOT #11.467-010) and a retail stocker (DOT # 290.477-014). Tr. 72-73. Utilizing the DOT, the VE then identified both positions as light, semi-skilled work. Tr. 73. The VE further testified that an individual of the Plaintiff's age, education, past work experience, and RFC could perform both positions. Tr. 73. As this was within the realm of the VE's expertise, we find that the VE's testimony provides substantial support for the ALJ's conclusion that the Plaintiff could return to her PRW.[2]

The remainder of the Plaintiff's argument centers around the RFC description contained within the hypothetical questions utilized by the ALJ. However, because we have already determined that substantial evidence supports the RFC, the Plaintiff's argument has no merit.

## V.    Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the decision. The

---

[2] The ALJ also questioned the VE concerning the Plaintiff's ability to perform sedentary work with the same postural and hazard limitations, and the VE identified several sedentary positions the Plaintiff would be able to perform. Tr. 73-75.

undersigned further directs that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 13th day of August, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE